IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEONARD GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:17-CV-377-RP |
| | § | |
| CITY OF BUDA, DEMERRIELL YOUNG, | § | |
| and KELLIE METZ, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a motion for summary judgment filed by Defendants City of Buda ("the City"), DeMerriell Young ("Young"), and Kellie Metz ("Metz") (together, "Defendants"). (Dkt. 18). Plaintiff Leonard Garcia ("Garcia") filed a response, (Dkt. 19), and Defendants replied, (Dkt. 20). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the motion should be granted in part and denied in part.

### I. BACKGROUND

This case concerns the use of force by two City of Buda police officers against a man in his home. (Compl., Dkt. 1, at 3–4). On January 21, 2016, Young and Metz were dispatched to Garcia's home to assist Child Protective Services ("CPS") with the removal of two children from the home. (Mot. Summ. J., Dkt. 18, at 2). After the officers were granted entrance to Garcia's home, Young spoke to Garcia, Garcia's wife, and the children's aunt in the living room about the purpose of CPS's visit. (*Id.* at 4). Young asked the family to sit on the couch while he addressed them. (*Id.*). Garcia and the children's aunt did so. (*Id.*). Meanwhile, Metz walked outside to get the CPS workers. (*Id.* at 5).

After Young had been speaking for about a minute, Garcia stood up from the couch and took off his jacket. (Young bodycam, Ex. 1-D, Dkt. 18-1, at 2:10). Young commanded him several

1

times to sit back down, but Garcia did not immediately comply, replying that it was his house. (*Id.* at 2:10–2:25). The parties characterize what happens next differently, but Young ends up on top of Garcia on the couch as Young restrains and ultimately handcuffs him. (*Id.* at 2:25–3:15). Metz, who reentered the house just as Garcia and Young began to argue, joined Young in subduing Garcia. (Metz bodycam, Ex. 1-C, Dkt. 18-1, at 6:08–6:30). After warning Garcia that she would tase him if he did not stop resisting, she tased him once. (*Id.* at 6:15–6:26). Young then took the handcuffed Garcia to his patrol car. (Mot. Summ. J., Dkt. 18, at 7). Garcia alleges that he was injured during this incident. (Compl., Dkt. 1, at 7–8).

Garcia sued Young, Metz, and the City for damages resulting from this incident on April 25, 2017. (*Id.*). He asserts several causes of action. First, he claims Young and Metz are liable under 42 U.S.C. § 1983 ("Section 1983") for violating his right to be free of excessive force under the Fourth Amendment to the United States Constitution. (*Id.* at 6–7). Second, he claims the City is liable under Section 1983 for failing to train and supervise Young on the appropriate use of force. (*Id.* at 6). Young and Metz assert qualified immunity as a defense to Garcia's claims. (Ans., Dkt. 6, at 5).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

If the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant does so, the burden shifts to the nonmoving party to

establish the existence of a genuine issue for trial. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. Even when considering a qualified immunity defense, however, the court must view the evidence in the light most favorable to the nonmovant and draw all inferences in the nonmovant's favor, *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

That said, when one party's version of the facts "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Although courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. *Griggs v. Brewer,* 841 F.3d 308, 312 (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). An unclear video is not enough to discount plaintiff's version of the facts. *Ramirez v. Martinez,* 716 F.3d 369, 374 (5th Cir. 2013).

### III. SUMMARY JUDGMENT EVIDENCE

The parties do not dispute, and the officers' bodycam footage shows, that Garcia met the officers at the door, took them inside the house, and followed Young's directions to sit on the couch. (Young bodycam, Ex. 1-D, Dkt. 18-1, at 0:49–1:20). Metz then left the room to talk to the

3

CPS workers waiting outside. (Mot. Summ. J., Dkt. 18, at 5; Metz bodycam, Ex. 1-C, Dkt. 18-1, at 5:56–5:59). As Young spoke to Garcia and his family, Garcia stood up from the couch and took a few steps into the middle of the living room. (Young bodycam, Ex. 1-D, Dkt. 18-1, at 2:11). Young commanded Garcia to "have a seat"; Garcia stood still and started to take off his jacket. (*Id.* at 2:14–2:20). Young then approached Garcia, repeatedly telling him to "have a seat." (*Id.*). Garcia took off his jacket, asking the officer why he should sit down and responding that "this is my house." (*Id.*; Garcia Dep., Dkt. 19-1, at 60:18-20). As Young neared Garcia, Garcia turned slowly away from Young and began moving back toward the couch. (Young bodycam, Ex. 1-D, Dkt. 18-1, at 2:20–2:22). While Garcia's back was turned to him, Young grabbed Garcia's right wrist. (Metz bodycam, Ex. 1-C, Dkt. 18-1, at 6:08). Garcia then turned back toward Young and said "this is my house" as Young pushed him onto the couch. (*Id.* at 6:08–6:10). Metz was outside when she heard Young ordering Garcia to "have a seat." (*Id.* at 6:02). Metz rushed back inside just as Garcia began taking off his jacket and Young approached Garcia. (*Id.* at 6:04–6:10).[1]

The parties dispute what happens next. According to Garcia, Young tackled him from behind while he was complying with Young's commands. (Resp. Mot. Summ. J., Dkt. 19, at 3). Young wrapped his arms around Garcia, drove him into the couch, and pinned his arms to his sides. (*Id.*). He was not fighting Young or otherwise resisting. (*Id.* at 3, 9). Metz grabbed his hands, threatened to tase him, and then did so while Young was still on top of him. (*Id.* at 3–4).

---

[1] The parties dispute how to interpret these clearly depicted actions. Young states that Garcia displayed "fight indicators" when he removed his coat and clenched his fists. (Mot. Summ. J., Dkt. 18, at 5). Young also states he believed there were firearms on the premises, and so he was concerned when Garcia reached for his jacket pocket. (*Id.* at 4–5). Garcia, meanwhile, argues that the officers were not concerned that Garcia might have a gun because they did not search the house for weapons and did not frisk him. (Resp. Mot. Summ. J., Dkt. 19, at 2, 7–8). He emphasizes that he did not step towards the officer or reach for anything. (*Id.* at 2). He claims that he responded to Young without sitting down because his military training taught him that it is disrespectful to speak to authority figures while seated. (Garcia Dep., Dkt. 19-1, at 60:18–62:19). He claims that he turned around toward the couch to comply with Young's commands. (Resp. Mot. Summ. J., Dkt. 19, at 3). Because Garcia is the nonmovant, the Court must view the evidence in the light most favorable to him unless the video evidence so blatantly contradicts his version of events that no reasonable jury could believe him, which it does not. *Ramirez*, 716 F.3d at 374

4

Defendants, meanwhile, state that once Garcia was on the couch, he refused to give up his hands and physically resisted their attempts to restrain him. (Mot. Summ. J., Dkt. 18, at 6). They claim that Garcia was physically resisting and that his arms were moving at the moment Metz tased him. (*Id.*).

Because Garcia is the nonmovant, the Court must view the evidence in the light most favorable to him unless the video evidence so blatantly contradicts his version of events that no reasonable jury could believe him. *Ramirez*, 716 F.3d at 374. Here, the video does not so blatantly contradict Garcia's version of events that no reasonable jury could believe him. Young's camera does not capture the position or movement of Garcia's hands for much of the period in question. (Young bodycam, Ex. 1-D, Dkt. 18-1, at 2:24–2:55). It does show that Garcia's left hand was free for a moment when he initially fell onto the couch, (*id.* at 2:26–2:27), but then the angle of the camera changes and little of Garcia's body is visible, indicating that Young was positioned almost directly above Garcia, (*id.* at 2:28–2:40). Metz's video is similarly unclear. Her video shows Young take Garcia down, but then only shows Garcia's head pressed into the couch for several seconds. (Metz bodycam, Ex. 1-C, Dkt. 18-1, at 6:08–6:22). Garcia was then rolled onto the floor and onto his left shoulder, his left arm free but under his body. (*Id.* at 6:22–6:24). Metz said "taser" four times in quick succession. (*Id.*). Garcia said, "What? I'm not doing nothing," just before Metz deployed the taser. (*Id.* at 6:24–6:25). Metz's video shows that Garcia then yelled in pain, turned over, and was pinned down on his stomach by Young and a third officer, Robert Blanchard. (*Id.* at 6:25–6:32).

### IV. DISCUSSION

Garcia asserts a Section 1983 excessive force claim against Young for "taking [him] down." (Compl., Dkt. 1, at 6). Garcia asserts a Section 1983 excessive force claim against Metz for tasing him while he was held down by Young. (*Id.* at 7). The Court will evaluate each claim in turn. *See Pratt v. Harris County, Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) ("The reasonableness of each defendant's actions [should be evaluated] separately, even if those defendants acted in unison.").

5

*A. Officer Young*

Young argues that he is entitled to qualified immunity and summary judgment. (Mot. Summ. J., Dkt. 18, at 15–17). Accordingly, the Court must decide (1) whether Young "violated a statutory or constitutional right" belonging to Garcia, *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); and (2) whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). The Court has the discretion to decide the order in which to answer these two questions, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and elects to do so in the manner set forth below.

1. Violation of Constitutional Right

Garcia states he suffered physical and mental injuries after being taken down by Young. (Compl., Dkt. 1, at 6–7). Young contends that his minimal use of force was reasonable, given circumstances that warranted his heightened alert. (Mot. Summ. J., Dkt. 18, at 12–13). The Court finds that Young's conduct was excessive and unreasonable and thus violated Garcia's right to be free from excessive force.

To show that Young violated Garcia's constitutional right to be free from excessive force, Garcia must show: "(1) an injury (2) which resulted from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2016) (citing *Poole*, 691 F.3d at 628). "Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Id.* "When reviewing a grant of summary judgment in the Fourth Amendment context, after first construing disputed historical facts in favor of the non-movant, the court must then ask how a reasonable officer would have perceived those historical facts." *Hill v. Carroll City, Miss.,* 587 F.3d 230, 235 (5th Cir. 2009).

6

The Court finds sufficient evidence of an injury. Garcia testified at his deposition that his knee was sore for several weeks because of being tackled. (Garcia Dep., Dkt. 19-1, at 121:24–122:23). He also testified to psychological injuries. (*Id.* at 123:2–124:16). "Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (cleaned up). "Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold." *Id.* (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). Therefore, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* (quoting *Brown*, 524 F. App'x at 79). Young does not dispute that there is evidence of some injury stemming from Young's conduct. (*See* Mot. Summ. J., Dkt. 18, at 10–13). Whether those injuries are sufficiently extensive therefore turns on the reasonableness of Young's conduct. *Alexander*, 854 F.3d at 309. For the reasons discussed below, the Court finds that, viewing the facts in the light most favorable to Garcia, Young's conduct was clearly excessive and objectively unreasonable.

"Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 728 (5th Cir. 2018) (cleaned up). In carefully reviewing the facts and circumstances of a case, the court should consider "the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 728–29 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The calculus

7

of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham,* 490 U.S. at 396–97).

The first *Graham* factor—the severity of the crime at issue—weighs in favor of Garcia. At the time Young used force, Garcia was not suspected of any crime.[2] When a suspect is stopped for a minor offense such as speeding, the need for force is "substantially lower than if she had been suspected of a serious crime." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). Such is the case, to an even greater extent, when a plaintiff is not suspected of any crime prior to the use of force.

The second *Graham* factor—whether Garcia posed a threat to the officers—also weighs in Garcia's favor. Viewing the evidence in the light most favorable to Garcia, he did not pose a threat to Young or the other officers. Before being taken down, he did not raise his voice, step toward the officers, or make a sudden movement. (Young bodycam, Ex. 1-D, Dkt. 18-1, at 2:14–2:20). A reasonable jury could conclude that Garcia's jacket removal was not threatening and that Young was not in fact concerned about the presence of a weapon. Although Garcia initially failed to comply with Young's verbal commands to sit down, his initial noncompliance did not, by itself, pose a safety threat. *See Ramirez,* 716 F.3d at 378 (holding that no reasonable officer could have concluded that the plaintiff posed a safety threat to the officers when the plaintiff questioned the officers' commands, did not comply with verbal orders, and then pulled away from an officer's grasp); *Hanks v. Rogers*, 853 F. 3d 738, 746 (holding that, where the plaintiff merely failed to comply with verbal instructions, no reasonable officer would have perceived "an 'immediate threat' warranting a physical takedown").

The final *Graham* factor—whether Garcia actively resisted arrest or attempted to flee—also weighs in favor of Garcia. Although Garcia initially did not comply with Young's commands to sit

---

[2] Garcia was ultimately arrested for interfering with public duties by resisting arrest. (Resp. Mot. Summ. J., Dkt. 19, at 7).

8

down, such noncompliance was only passive. "[W]here an individual's conduct amounts to mere 'passive resistance,' use of force is not justified." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017) (citing *Hanks*, 853 F.3d at 746). Moreover, at the moment that Young took Garcia down, Garcia was—viewing the facts in his favor—complying with Young's command. Under these facts, a reasonable jury could find that Garcia did not actively resist or attempt to flee prior to Young's takedown.

Altogether, then, each *Graham* factor tilts in Garcia's favor at this stage in the litigation. Considering the totality of the circumstances, construing the evidence in Garcia's favor, and viewing that version of events as a reasonable officer would have, the Court finds that a reasonable jury could determine that Young's use of force was clearly excessive and objectively unreasonable.

## 2. Clearly Established Law

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). While there need not be "a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)). Essentially, an officer must have "fair notice" that his actions would result in the violation of a constitutional right. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

In the context of a pretrial motion, the Court must determine whether an officer is entitled to qualified immunity in light of the applicable standard of review. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014) (holding that at summary judgment, a court cannot resolve fact disputes pertaining to either prong of qualified immunity in favor of the moving party). The fundamental question, then, is whether Young would have had fair notice that his actions were unreasonable, based on the evidence viewed in the light most favorable to Garcia. *Hope*, 536 U.S. at 740.

9

By January 21, 2016, clearly established law demonstrated that an officer "violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Hanks*, 853 F.3d at 747 (describing clearly established law as of February 2013, and citing *Deville*, 567 F.3d at 167–69 (denying qualified immunity where an officer making a minor traffic stop pulled the plaintiff out of her car and threw her up against the car because she passively resisted commands and presented no safety threat or flight risk)); *Trammell*, 868 F.3d at 343 (holding that "the law [as of January 2013] clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp") (citing *Ramirez*, 716 F.3d at 379; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). The facts here are not even as favorable to Young as they were to the officers in *Hanks* or *Trammell*. Garcia was not stopped for a minor traffic violation; he was suspected of no crime at all. *See Hanks*, 853 F.3d at 745. Moreover, Garcia had not actively resisted by a physical act such as pulling his arm out of an officer's grasp. *See Trammell*, 868 F.3d at 341. Just as the law at the relevant time for those decisions—the facts of which predate the incident here—clearly established that those officers' conduct was proscribed by the Fourth Amendment, so too does that law suffice to give Young fair notice that his conduct was objectively unreasonable.[3] He is not entitled to qualified immunity at this stage in the litigation, and summary judgment on Garcia's claim against him is unwarranted.

---

[3] Defendants cite *Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015), for the proposition that "officers are trained to use nonlethal force to gain compliance if a subject actively resists arrest and does not comply with verbal task directions." (Reply Mot. Summ. J., Dkt. 20, at 3). Defendants overstate the holding of *Carroll*. There, the Fifth Circuit held only that in October 2006 it was not "clearly established that using a Taser to gain compliance of a unarmed, seated suspect for resisting arrest and failing to follow verbal commands was clearly excessive and objectively unreasonable." *Carroll*, 800 F.3d at 175. The case law has become clearer in the intervening years. *See Hanks*, 853 F.3d at 747; *Trammell*, 868 F.3d at 343.

*B. Metz*

Metz argues that she is entitled to qualified immunity and summary judgment. (Mot. Summ. J., Dkt. 18, at 15–17). As with Garcia's claim against Young, the Court will first determine whether Metz violated a constitutional right and then examine whether that right was clearly established prior to Metz's use of force.

<u>1. Violation of Constitutional Right</u>

Garcia states he suffered physical and mental injuries after being tased by Metz. (Compl., Dkt. 1, at 6–7). Metz contends that her minimal use of force was reasonable, given circumstances that warranted her heightened alert. (Mot. Summ. J., Dkt. 18, at 12–13). The Court finds that Metz's conduct was excessive and unreasonable and thus violated Garcia's right to be free from excessive force.

As before, Garcia must show: "(1) an injury (2) which resulted from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Griggs,* 841 F.3d at 312. Again, Court finds sufficient evidence of an injury. Garcia testified at his deposition that being tased in his chest felt like "a fishhook" in his skin. (Garcia Dep., Dkt. 19-1, at 116:17–117:4). He also testified to psychological injuries. (*Id.* at 123:2–124:16). Metz does not dispute that there is evidence of some injury stemming from her conduct. (*See* Mot. Summ. J., Dkt. 18, at 10–13). Whether those injuries are sufficiently extensive therefore turns on the reasonableness of Metz's conduct. *Alexander*, 854 F.3d at 309. For the reasons discussed below, the Court finds that, viewing the facts in the light most favorable to Garcia, Metz's conduct was clearly excessive and objectively unreasonable.

Applying the *Graham* factors once again, the Court finds that the first factor weighs in Garcia's favor because he was suspected of no crime at the time Metz used force against him.[4] The Court finds that the second and third factors weigh in Garcia's favor, as well. Metz claims that Garcia was actively resisting Young and Blanchard when she warned Garcia that he would be tased, and that she tased him because he "continue[d] to move around, preventing the other officers from getting him restrained." (Mot. Summ. J., Dkt. 18, at 12–13). Garcia, meanwhile, states that he was not resisting and that in fact he could not resist because Young had wrapped his arms around Garcia and pinned Garcia's arms to his side. (Resp. Mot. Summ. J., Dkt. 19, at 9). No video so blatantly contradicts Garcia's version of events that a reasonable jury could not believe it. *Scott*, 550 U.S. at 380. At most, Metz's video shows Garcia telling the officers to leave his house, asking why he would be tased, and that his left arm was free underneath his body until he was tased. (Metz bodycam, Ex. 1-C, Dkt. 18-1, at 6:08–6:26). Even if Garcia had pulled his arms out of Young's grasp—which the video does not clearly show—it would be excessive and objectively unreasonable to tase him. *Ramirez*, 716 F.3d at 377; *Trammell*, 868 F.3d at 341–42. But viewed in the light most favorable to Garcia, he exhibited only passive resistance—not offering up his hands and questioning the officers' authority to arrest him—which cannot justify the use of a taser to gain compliance. *See Darden*, 880 F.3d at 731 ("[A] constitutional violation occurs when an officer tases . . . an arrestee who is not actively resisting arrest.") (citing *Newman v. Guedry*, 703 F.3d 757, 762–63 (5th Cir. 2012)). Altogether, then, each *Graham* factor tilts in Garcia's favor at this stage in the litigation. Considering the totality of the circumstances, construing the evidence in Garcia's favor, and viewing Garcia's version of events as a reasonable officer would have, the Court finds that a reasonable jury could determine that Metz's use of force was clearly excessive and objectively unreasonable.

---

[4] Metz claims that she "saw [Garcia] actively resisting" Young and Blanchard when she approached Garcia, (Mot. Summ. J., Dkt. 18, at 12), but that fact is relevant to the second and third *Graham* factors, not the first.

## 2. Clearly Established Law

Like Young, Metz had fair notice that her use of force was unconstitutional. The rule that "a constitutional violation occurs when an officer tases . . . an arrestee who is not actively resisting arrest" was clearly established as early as May 2013. *Darden*, 880 F.3d at 731 (citing *Newman*, 703 F.3d at 762–63; *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). Even under Metz's version of events, in which Garcia was "mov[ing] around, preventing [Young and Blanchard] from getting him restrained," the law was clearly established by January 2016 that it is objectively unreasonable to tase a suspect whose resistance is limited to pulling away from an officer's grasp. *See Trammell*, 868 F.3d at 343 (citing *Ramirez*, 716 F.3d at 379; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Just as the law at the relevant time for *Darden* and *Trammell*—the facts of which predate the incident here—clearly established that the conduct of the officers in those cases was proscribed by the Fourth Amendment, so too does that law suffice to give Metz fair notice that her conduct was objectively unreasonable. She is not entitled to qualified immunity at this stage in the litigation, and summary judgment on Garcia's claim against her is unwarranted.

### *C. City of Buda*

Garcia asserts a Section 1983 claim against the City for failing to train and supervise Young on the appropriate use of force. (Compl., Dkt. 1, at 6). According to Garcia, Young used excessive force on another suspect in 2014, and the City did not retrain him or appropriately supervise him after that incident. (*Id.* at 5–6). The City argues that it is entitled to summary judgment. (Mot. Summ. J., Dkt. 18, at 13). The Court agrees with the City.

To hold a municipality liable under Section 1983 for the misconduct of an employee, "a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009). "The official policy itself must be

unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* (citation and quotation marks omitted). A single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable. *Brown v. Bryan County, OK*, 219 F.3d 450, 462 (5th Cir. 2000). This "single incident exception" to proving deliberate indifference is "a narrow one." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted). "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Id.* at 385–86 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)).

The failure to train can amount to a policy if there is "deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). Moreover, it does not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training." *Id.* at 391.

The same deliberate indifference standard applies to failure-to-supervise claims. *Id.* at 850. To satisfy the deliberate indifference standard, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training"—or supervision—"is obvious and obviously likely to result in a constitutional violation." *Estate of Davis*, 406 F.3d at 381. The pattern of violations must be "fairly similar to what ultimately transpired" in the instant case. *Id.* at 383.

No reasonable jury could find that the City has been deliberately indifferent to the need to train or supervise Young. There is no pattern of excessive force use that would obviously result in a

constitutional violation. *Peterson*, 588 F.3d at 849; *Estate of Davis*, 406 F.3d at 381. Garcia's only evidence of a pattern is a single prior use of force in 2014, one that this Court determined to be objectively reasonable as a matter of law. *Martinez v. City of Buda, Texas*, A-16-CA-1116-SS, 2018 WL 837609, at *5 (W.D. Tex. Feb. 13, 2018). Young has taken 16 hours of use-of-force training since that incident. (TCOLE Report, Dkt. 1, at 6). Garcia has no evidence that those 16 hours were missing a necessary component or were otherwise inadequate. (*See* Resp. Mot. Summ. J., Dkt. 19, at 4–6). A single incident can only form the basis of Garcia's failure-to-train or failure-to-supervise claim if it is a "highly predictable consequence" that the failure to train or supervise Young would have resulted in this use of force. *Estate of Davis*, 406 F.3d at 385–86 (citation and quotation marks omitted). No reasonable jury could conclude that the City should have expected Young to use excessive and unreasonable force based on a single use of force that was ultimately found to be objectively reasonable as a matter of law. Moreover, the City *did train* Young on using force after that single incident, and Garcia—who has the ultimate burden of proof—has produced no evidence sufficient to create a genuine issue of material fact as to that training's adequacy. The City is entitled to summary judgment on Garcia's claim against it.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 18), is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** insofar as the Court grants summary judgment in the City's favor on Garcia's claim against it. The motion is **DENIED** in all other respects.

15

**SIGNED** on December 19, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE